IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEVEN LOUIS DEWOLF, )
 )
      Plaintiff, )
 )
  v. ) No. 11 C 2043
 )
MICHAEL J. ASTRUE, Commissioner )
of Social Security, )
 )
      Defendant. )

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff Steven Louis Dewolf's (Dewolf) and Defendant Social Security Administration's (SSA) motions for summary judgment are denied and Dewolf's alternative motion to remand is granted. This matter is remanded to the SSA for further proceedings consistent with this opinion.

# BACKGROUND

Dewolf contends that in 2005 he sustained an injury at work when he was hit on the back of the neck by a falling door. Dewolf contends that he had to have

cervical fusion back surgery. After surgery, Dewolf allegedly returned to work, but in 2006 he was knocked unconscious by a baseball bat during a "road rage" incident. (Mem. 2). Dewolf contends that, due to his injuries, he was forced to quit his job of 29 years in 2006 after using up all his vacation days. Dewolf contends that he suffers from impairments that include depression, traumatic injury to the brain with memory loss, and traumatic injury to the cervical spine post decompression laminectomy. Dewolf also claims to suffer from pain in his neck, shoulders, and hips and contends that he has numbness, poor balance, poor memory, severe depression, and type two diabetes. Dewolf filed an application (Application) for Disability Insurance Benefits with the SSA. The SSA denied the Application, and Dewolf requested a hearing before an Administrative Law Judge (ALJ). On October 30, 2009, the ALJ denied the request for benefits, and on January 31, 2011, the Appeals Council denied a request for review. On March 24, 2011, Dewolf filed the instant appeal from the ALJ's ruling. The parties have now filed cross-motions for summary judgment.

**LEGAL STANDARD**

Pursuant to 42 U.S.C. § 405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's

decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## DISCUSSION

Dewolf argues that the ALJ erred, contending: (1) that the ALJ failed to accord proper weight to the opinion of Dewolf's treating physician, (2) that the ALJ failed to properly consider Dewolf's mental impairments, (3) that the ALJ erred in her determination regarding Dewolf's credibility, and (4) that the hypothetical questions posed to the vocational expert (VE) did not accurately reflect the totality of Dewolf's limitations.

I. Weight Given to Opinion of Treating Physician

Dewolf argues that the ALJ erred by failing to accord proper weight to Dewolf's treating physician, Dr. Merwick (Merwick). Under the treating physician rule, "[a] treating physician's opinion that is consistent with the record is generally entitled to 'controlling weight.'" *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011)(quoting 20 C.F.R. § 404.1527(d)(2)); *see also Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir.

2011)(stating that "[a] treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record")(quoting 20 C.F.R. § 404.1527(d)(2)).

In the instant action, the ALJ concluded that there was "little objective basis" for Merwick's opinions as to Dewolf's limitations, and the ALJ gave "no weight" to the opinions of Merwick. (AR 63-64). However, the ALJ has not provided an adequate basis to completely discount the opinions of Dewolf's physician, who treated Dewolf for over twenty years, and instead adopt the opinions of the medical experts in the case, some of whom it appears did not actually observe Dewolf personally except at the hearing before the ALJ. (AR 64). The ALJ indicated in her ruling that Merwick's opinion as to Dewolf's ability to sit, stand, and lift is not supported by objective clinical or diagnostic findings in the record. (AR 64). However, the ALJ failed to specify the portion of the record containing the objective clinical or diagnostic findings that the ALJ believed contradicted Merwick's opinion. (AR 64). Although the SSA, in its instant motion/response, attempts to justify the ALJ's ultimate decision, it was incumbent upon the ALJ to provide a clear justification for her determination. *Scott*, 647 F.3d at 739.

In deciding to give no weight to the opinion of the treating physician, the ALJ also relied heavily upon what the ALJ deemed to be inconsistencies between a 2008

4

report prepared by Merwick and a 2009 report prepared by Merwick as to Dewolf's condition. (AR 64). Although the reports are not identical, the ALJ did not point to any specific material inconsistencies in the two reports. Both reports indicate that Dewolf was incapable of performing work at either a sedentary or light level on a sustained basis and explain Dewolf's physical and mental impairments. The ALJ has not provided a detailed explanation for the rejection of Merwick's opinions based on any incongruities in Merwick's reports, nor has the ALJ provided a sound explanation for the rejection of Merwick's opinions, as required under the treating physician rule.

SSA argues that one of the "convincing bases for rejecting [Merwick's] opinion," was that the ALJ gave no weight to Merwick's opinion and gave significant weight to the opinion of the medical experts. (Ans. 5). However, the fact that the ALJ agreed with the opinions of the medical experts in the case is not itself a sufficient reason for the ALJ to reject the opinion of the treating physician and it did not relieve the ALJ of the requirement to provide a sound explanation for the rejection of the opinion of the treating physician. The Seventh Circuit has made clear that an ALJ who disagrees with the opinion of a treating physician "must provide a sound explanation for the rejection," and if "an ALJ decides to favor another medical professional's opinion over that of a treating physician, the ALJ

5

must provide an account of what value the treating physician's opinion merits." *Jelinek*, 662 F.3d at 811. Thus, the ALJ must offer more information than simply indicating that the ALJ agrees with another medical expert's opinion that is contrary to the opinion of the treating physician despite the fact that the treating physician's opinion is generally given controlling weight. *See, e.g., Scott*, 647 F.3d at 739 (stating that "[a]n ALJ must offer 'good reasons' for discounting the opinion of a treating physician").

Although Dewolf has moved in his summary judgment motion for a finding of disability in his favor at this juncture, Dewolf has not pointed to sufficient uncontroverted objective evidence showing that Merwick's opinions must be accepted as true at this juncture. This action will therefore be remanded to the ALJ for further proceedings in order to provide the ALJ with an opportunity to expand the record, if warranted, and to elaborate as to her reasoning regarding Merwick's opinions. *See Jelinek*, 662 F.3d at 811 (stating that "[a] decision denying benefits need not discuss every piece of evidence, but when an ALJ fails to support her conclusions adequately, remand is appropriate").

II. Consideration of Mental Impairments

Dewolf argues that the ALJ failed to properly consider Dewolf's mental

impairments. The ALJ indicated that Dewolf was given a neuropsychological condition evaluation by Dr. Gregory Malo (Malo) and that the ALJ gave Malo's opinion "fairly significant weight." (AR 61). The ALJ concluded based upon Malo's opinion that Dewolf should be able to engage in "some type of work on an ongoing basis." (AR 61). However, the ALJ failed to adequately explain how she arrived at that conclusion in light of Malo's opinion as to Dewolf's mental health. *See Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)(stating that "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his conclusions")(quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000)). Malo indicated, for example, that Dewolf suffers from "[m]ajor depressive disorder, recurrent, severe with delusional thinking" and that he has an inability to cope with and resolve conflicts. (AR 361-62). The ALJ cannot ignore the evidence provided by medical experts and make her own independent medical findings. *See Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 702 (7th Cir. 2009)(indicating that "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings'")(quoting *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996)). The ALJ has not provided an adequate analysis concerning all of Dewolf's mental limitations in their totality. The court also notes that SSA has not argued in its motion/response that the ALJ properly

considered Dewolf's mental impairments.  Therefore, this action will be remanded to provide the ALJ with an opportunity to expand the record and to elaborate as to her reasoning regarding Dewolf's mental conditions.

III.  Credibility Findings

Dewolf argues that the ALJ erred in her credibility determination of Dewolf's testimony.  If an ALJ "has explained her decision" relating to a credibility determination, the determination will not be overturned "unless it is patently wrong." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).  In the instant action, Dewolf contends that the ALJ erred in finding certain testimony by Dewolf concerning the intensity, persistence, and limiting effects of his impairments to lack credibility.  Dewolf points to portions of the record that he asserts support his testimony and contradict the ALJ's findings as to Dewolf's credibility.  In view of the fact that the ALJ failed to fully develop the record and the case is being remanded for further proceedings, the ALJ will take into consideration the full record when assessing the credibility of Dewolf.

IV.   Hypothetical Questions

Dewolf argues that the ALJ erred by posing hypothetical questions to the VE

that did not accurately reflect the totality of Dewolf's limitations. In general, when consulting with the VE, the ALJ must "orient the VE to the totality of a claimant's limitations." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *see also Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009)(indicating that when the ALJ evaluates the claimant's RFC, "[c]ommonly, the ALJ will pose a series of hypothetical questions that describe the claimant's conditions and limitations, and the VE will testify to the number of jobs that the claimant can perform based on those limitations"). Dewolf argues that the questions posed to the VE did not reflect the claimant's deficiencies in concentration, persistence, and pace, and that the VE did not have an understanding of the totality of his limitations. The Seventh Circuit requires that hypothetical questions posed to the VE reflect deficiencies in "concentration, persistence, and pace." *Id.* The Seventh Circuit has also made exceptions to the requirement concerning concentration, persistence, and pace in certain instances, such as when the record shows that the VE has "independently reviewed the medical record," or when "a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work." *Id*.

In this case, the record does not indicate that the ALJ's hypothetical questions posed to the VE addressed the issues of concentration, persistence, and pace. The ALJ's Residual Functional Capacity (RFC) determination at least in part implicitly

9

raises such potential limitations. SSA fails to point to evidence showing that the VE had independent knowledge of Dewolf's limitations in concentration, persistence, and pace limitations. Although the ALJ did specifically ask the VE about low-stress work, the record does not reflect that Dewolf's condition is stress- or panic-related. Thus, the ALJ failed to properly incorporate Dewolf's limitations of concentration, persistence, and pace into the hypothetical questions posed to the VE.

Dewolf also argues that the ALJ's hypothetical questions failed to incorporate the social interaction limitations included in the RFC. The ALJ concluded in her ruling as part of her RFC determination that Dewolf "has a minimal ability to interact appropriately with the general public, supervisors, and coworkers on an intermittent basis." (AR 59). However, the ALJ did not include that precise RFC limitation in the hypothetical questions posed to the VE, and instead merely asked the VE hypothetically about an individual who could have only "minimal contact with supervisors, co-workers, and the public." (AR 45). Thus, the ALJ did not fully incorporate the RFC findings into the hypothetical questions posed to the VE. Therefore, the instant action will be remanded for further proceedings consistent with this opinion as to the hypothetical questions posed to the VE.

## CONCLUSION

Based on the foregoing analysis, Dewolf's and SSA's motions for summary judgment are denied and Dewolf's alternative motion to remand is granted. This matter is remanded to the SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: February 27, 2012